## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into by and between plaintiff Jacqueline Brenner ("Plaintiff"), individually, and in her representative capacity on behalf of all others similarly situated on the one hand, and defendant J.C. Penney Company, Inc. (J.C. Penney") on the other hand. Plaintiff and J.C. Penney jointly are referred to herein as "Parties."

## RECITALS

**WHEREAS** on or about March 15, 2013, Plaintiff sent notice to J.C. Penney of her intent to file a class action complaint in the United States District Court for the District of Massachusetts in which she will state claims against J.C. Penney for alleged violation of M.G.L. c. 93 sec 105(a) on behalf of all others similarly situated ("Action");

**WHEREAS** the Parties conducted a factual investigation and analyzed the relevant legal issues with regard to the claims in, and potential defenses to, the Action. Plaintiff and her counsel contend that the Action has merit. J.C. Penney and its counsel contend that the Action does not have merit and that J.C. Penney has defenses that could eliminate or reduce liability and monetary recovery in this case. The Parties also have each looked at the uncertainties of trial and the benefits to be obtained under the proposed settlement and have considered the costs, risks, and delays associated with the continued prosecution of this time-consuming litigation and the likely appeals of any rulings in favor of either Plaintiff or J .C. Penney;

**WHEREAS** the Parties engaged in arms-length negotiations, and on or about May 13, 2013, the Parties participated in an all-day mediation conducted by The Honorable Edward A. Infante (Ret.). With the assistance of Judge Infante, a settlement was reached, which is embodied in this Agreement;

**WHEREAS** J.C. Penney generally and specifically denies the allegations in the Action that Plaintiff or the putative class have been damaged in any sum whatsoever, and that Plaintiff or the putative class are entitled to any relief;

**WHEREAS** the Parties recognize and agree that it is in their mutual best interests to resolve their differences as set forth herein. The Parties also recognize and agree that none admit to any wrongdoing and that the agreements and releases set forth below represent the Parties' compromise of disputed matters in order to avoid the delay and uncertainties of litigation and the further disruption and expense of the Action;

**WHEREAS** the Parties wish to fully, finally, and completely resolve all claims, causes of action, demands, liabilities, losses and damages of any kind, known or unknown, as defined in this Agreement, including Plaintiff's rights to be compensated for such claims and the propriety of injunctive relief.

NOW, THEREFORE, in exchange for the mutual covenants and promises contained herein and other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

## AGREEMENT

In consideration of the covenants and agreements set forth herein, Plaintiff, the Settlement Class, and J.C. Penney, themselves and through their undersigned counsel, agree to settle the Claim, subject to Court approval, under the following terms and conditions.

**1.     DEFINITIONS.** Unless otherwise indicated above, the following shall be defined terms for purposes of this Agreement. Some definitions use terms that are defined later in the section.

**1.1.**     The term **"Action" or "Claim"** means the claims set out in the March 15, 2013, notice of claim pursuant to M.G.L. c. 93A sec 9 and subsequent claims filed in Court referencing the claim notice to J.C. Penney as well as alleging violations of M.G.L. c. 93 sec. 105(a).

**1.2.**     The term **"Agreement"** means this Settlement Agreement and Release, including all exhibits attached hereto.

**1.3.**     The term **"Certificate(s)"** refers to a transferable merchandise certificate issued by J.C. Penney that shall be valid for a credit of either ten dollars ($10.00) or twenty-five dollars ($25.00), depending upon when J.C. Penney first obtained the customer zip code. The Certificates are to be used on a single, in-store purchase. Only one Certificate may be used by each customer. The Certificates may be redeemed at any J.C. Penney retail store. No minimum or maximum purchase amount is required to use the Certificates, but they cannot be redeemed for cash back, and any remaining balance not used in a single, in-store transaction shall be forfeited. No monetary refund, cash, or change of any kind shall be provided for all or any portion of the certificate's value. The Certificates are not gift cards or gift certificates, and cannot be replaced or redeemed if lost or stolen. The Certificates are not redeemable for telephone orders, JCP.com, Sephora Inside J.C. Penney, Outlet Stores, Optical, Portrait, Salon Services & Service Contracts, Gift Cards, or prior purchases. The Certificate amount will be applied to all qualifying items on a prorated basis. The Certificates cannot be redeemed as cash or merchandise credit if merchandise is returned. The Certificates shall expire one hundred and twenty days (120) days after issuance. Copies of the Certificates will not be accepted. The Certificates shall be immediately available for Settlement Class Members' redemption upon receipt.

**1.4.**     The term **"Claims Administrator"** means the settlement administrator designated by J.C. Penney to effectuate this Settlement.

**1.5.**     The terms **"Class"** and **"Class Members"** mean "All persons from whom J.C. Penney requested and recorded a ZIP code in conjunction with a credit card purchase transaction in a Massachusetts retail store from March 10, 2009 through the date that the Court enters the Preliminary Approval Order, and for whom J.C. Penney maintains an email address or mailing address."

2

**1.6.** The term "**Class Representatives**" means Plaintiff Jacqueline Brenner in her representative capacity on behalf of the Class.

**1.7.** The term "**Notice**" means the March 15, 2013 letter notifying J.C. Penney of Plaintiff's intention to file a complaint alleging claims of violation of M.G.L. c. 93 sec. 105(a).

**1.8.** The term "**Court**" means the United States District Court for the District of Massachusetts.

**1.9.** The term "**Fairness Hearing**" means the hearing at or after which the Court will make a final decision whether to approve this Agreement as fair, reasonable and adequate.

**1.10.** The term "**Final Judicial Approval**" means the date upon which any of the following events occurs: (1) the expiration of the time for filing an appeal if there are any objections filed by any Class Member; (2) the conclusion of any appeal taken if there are any objections filed by any Class Member; (3) the withdrawal of the last objection to the Settlement; or (4) the entry of the Final Order if there are no objections filed by any Class Member.

**1.11.** The term "**Final Order**" means the order approving the Settlement and this Agreement.

**1.12.** The term "**Full Class Notice**" means the Full Class Notice of the proposed Settlement terms, as approved by Plaintiffs' Counsel, J.C. Penney's Counsel, and the Court to be posted on the Settlement Website pursuant to Section 3.2 of this Agreement.

**1.13.** The term "**J.C. Penney**" means J.C. Penney Company, Inc.

**1.14.** The term "**J.C. Penney's Counsel**" means Christopher B. Parkerson and the law firm of Campbell, Campbell, Edwards & Conroy, P.C.

**1.15.** The term "**Plaintiff**" means plaintiff Jacqueline Brenner individually and in her representative capacities on behalf of the Class.

**1.16.** The term "**Parties**" means J.C. Penney and Plaintiff Jacqueline Brenner, individually and in her representative capacities on behalf of the Class.

**1.17.** The terms "**Plaintiff's Counsel**" or "**Class Counsel**" means D. Greg Blankinship and Meiselman, Packman, Nealon, Scialabba & Baker, P.C.

**1.18.** The term "**Preliminary Approval Order**" means the order certifying the Class for settlement purposes only, approving the proposed notice, and setting the date and time of the Fairness Hearing.

**1.19.** The term "**Settlement**" means the settlement of the Action and related claims effectuated by this Agreement.

**1.20.** The term "**Settlement Class**" means those persons who are members of the Class who have not properly and timely opted out of the Action.

**1.21.** The term "**Settlement Class Member**" means any person who is included in the Settlement Class.

**1.22.** The term "**Summary Notice to Class Members**" means the summary of the Full Class Notice of the terms of the proposed Settlement, as approved by Plaintiff's Counsel, J.C. Penney's Counsel, and the Court, to be provided pursuant to Section 3.2 of this Agreement.

## 2. SETTLEMENT TERMS.

**2.1. Certification of the Class.** For the purposes of the Settlement only and the proceeding contemplated herein, the Parties stipulate and agree that: (I) the Class shall be certified in accordance with the definition contained in Section 1.5 above; (2) Plaintiff shall represent the Class for settlement purposes and shall be the Class representatives; and (3) Plaintiff's Counsel shall be appointed as Class Counsel.

**2.2. Award to the Settlement Class.** The Class shall be divided in to two sub-classes. The first sub-class ("sub-class one") shall include Class Members from whom J.C. Penney requested and recorded a ZIP code for the first time in conjunction with a credit card purchase transaction in a Massachusetts retail store after March 10, 2009, and for whom J.C. Penney maintains an email address or mailing address. The second sub-class ("sub-class two") shall include Class Members from whom J.C. Penney requested and recorded a ZIP code in conjunction with a credit card purchase transaction in a Massachusetts retail store after March 15, 2009, but who had previously provided a zip code prior to March 10, 2009, and for whom J.C. Penney had maintained an email address or mailing address prior to March 10, 2009. All Class Members shall receive Class Notice pursuant to Section 3.2 below. Class Members in sub-class one shall automatically receive a Twenty-Five Dollar and No Cents ($25.00) Certificate to be used at any J.C. Penney retail store. Class Members in sub-class two shall automatically receive a Ten Dollar and No Cents ($10.00) Certificate to be used at any J.C Penney retail store. J.C. Penney will distribute the Class Notice and Certificates via email or U.S. Mail, as described in Section 3.2 of this Agreement.

**2.3. Compliance with all laws.** J.C. Penney agrees to comply with all the provisions of M.G.L. c. 93 sec. 105(a) in its Massachusetts retail stores.

**2.4. Incentive Award to Class Representative.** The Parties agreed that Class Representative shall be entitled to an incentive award of Five Thousand Dollars and No Cents ($5,000.00) in recognition of the amount of time and effort spent by Plaintiff as the Class Representatives. This amount was determined to be appropriate only after an agreement had been reached on all Class settlement terms. The Parties agree that Plaintiff will request an incentive award of no more than Five Thousand Dollars and No Cents ($5,000), to which Defendant will not object, to be approved by the Court. Accordingly, in the event this Agreement receives Final Judicial Approval, and the incentive award is approved by the Court, J.C. Penney shall pay

within fifteen (15) calendar days thereafter the incentive awards of Five Thousand Dollars and No Cents ($5,000.00) to Class Representative Jacqueline Brenner.

**2.5. Attorneys' Fees and Costs.** The parties could not reach agreement on attorneys' fees and costs to be paid by J.C. Penney and accordingly Plaintiff's Counsel shall make a petition for attorney's fees to which J.C. Penney reserves the right to object.

**2.6. Settlement Implementation Costs.** J.C. Penney shall bear all costs of providing Class Notice in the manner set forth in Section 3.2 below of this Agreement and all costs associated with administration of the Settlement.

## 3. CLASS SETTLEMENT PROCEDURES.

**3.1. Settlement Approval.** As soon as practicable after the execution of this agreement by the Parties, Plaintiff shall file a Complaint and a Notice of Settlement and an application for a Preliminary Approval Order requesting the Court to approve this Agreement as fair, reasonable and adequate, approving the content and method of Class Notice, and setting the date and time of the Fairness Hearing.

**3.2. Class Notice.** Subject to Court approval, the Parties agree that after entry of the Preliminary Approval Order, the Claims Administrator and/or J.C. Penney will provide the Class with Notice of the proposed Settlement and the Certificate by the following methods:

(a) The Claims Administrator will distribute the Summary Notice and the Certificate to Class Members via email or U.S. mail beginning no more than thirty (30) calendar days after the entry of the Preliminary Approval Order;

(b) Internet posting by the Claims Administrator of the Full Class Notice beginning no more than forty-five (45) calendar days after entry of the Preliminary Approval Order for sixty (60) days.

**3.3. Proof of Notice.** No later than fifteen (15) court days before the Fairness Hearing, the Claims Administrator and/or J.C. Penney will file with the Court and serve upon Plaintiff's Counsel a declaration confirming that the Class Notice and Certificate have been provided in accordance with Section 3.2 of this Agreement.

**3.4. Objections.** Any Class Member who wishes to object to the Settlement must mail a written objection to the Claims Administrator and serve copies on Class Counsel and J.C. Penney's Counsel within thirty (30) days after the Summary Notice is distributed. The objection must set forth, in clear and concise terms, the legal and factual arguments supporting the objection. Unless otherwise requested by the Court, Class Members shall not be entitled to speak at the Fairness Hearing unless they have submitted a timely written objection pursuant to this paragraph and indicated their intent to appear at the Fairness Hearing. Use of the Certificate by the Class Member, or a Class Member's transferee, will be deemed to have waived the Class Member's objection to the Settlement.

**3.5.    Exclusion from the Class.** The Class Notice shall inform Class Member of their right to elect not to be part of the Class and not to be bound by this Agreement, provided that the affected person mails a request for exclusion from the Class to the Claims Administrator within thirty (30) days after the Summary Notice is distributed, with a copy to Class Counsel and J.C. Penney's counsel. No later than ten (10) court days prior to the Fairness Hearing, the Claims Administrator shall prepare a list of the persons who, pursuant to the class notice, have excluded themselves from the Class in a valid and timely manner and shall deliver that list to Class Counsel and J.C. Penney's Counsel. Use of the Certificate by the Class Member, or a Class Member's transferee, will be deemed to have waived the Class Member's exclusion from the Settlement.

## 4.    FINAL JUDGMENT AND RELEASES.

**4.1.    Approval of this Agreement.** Well in advance of the Fairness Hearing, counsel for the Parties will jointly take all necessary and appropriate steps to secure the Court's approval of this Agreement, with Class Counsel to prepare and submit all briefs to the Court.

**4.2.    Order and Judgment.** At or before the Fairness Hearing, Class Counsel shall move for an Order granting final approval of this Agreement and a Judgment in favor of Plaintiff and the Class. The Judgment shall provide for Plaintiff and the Class to take according to this Agreement and nothing else and shall include provisions that the Action is concluded pursuant to the entry of the Judgment. Notwithstanding the conclusion of the Action, the Parties stipulate that the Judgment will include a provision for the Court to retain jurisdiction to enforce this Agreement.

**4.3.    Effect of Agreement if Settlement Is Not Approved.** This Agreement was entered into only for the purpose of settlement. In the event that the Court does not approve the Settlement, or the Final Order is not entered for any reason, then this Agreement shall be deemed null and void *ab initio*. In such event, it shall not be admissible or usable for any purpose.

**4.4.    Release of J.C. Penney by All Class Members.** Effective upon the date of Final Judicial Approval, Plaintiff and each member of the Settlement Class who have not timely requested exclusion from the Settlement Class, and each of their, his, or her, as the case may be, respective successors, assigns, legatees, heirs and personal representatives who or shall release and forever discharge J.C. Penney, and each of its past and present parents, divisions, subsidiaries, affiliates, predecessors, partners, successors, assigns, officers, directors, employees, investigators, attorneys, contractors, subcontractors, agents, insurers and representatives and all persons acting by, through, under or in concert with them, or any of them (the "Released Parties"), from the Released Claims, including, without limitation, from any and all claims, rights, demands, actions, obligations, damages, liabilities, and causes of action of any and every kind, nature and character whatsoever, whether based in tort, contract, statute or on any other theory of recovery, whether known or unknown, and whether for equitable relief, statutory penalties, compensatory or punitive damages, which Plaintiffs or each member of the Settlement Class ever had or could have asserted against the Released Parties arising out of or relating to any and all alleged requests for and recording of personal identification information, including violations of M.G.L. c. 93 sec. 105(a) and M.G.L. c. 93A sec 9.

**4.5. General Release of J.C. Penney by Named Plaintiff.** In addition to the releases made by the Class Members set forth in Section 4.4 of this Agreement above, effective upon the date of Final Judicial Approval, the Named Plaintiff shall make the additional following general release of all claims, known or unknown. Named Plaintiff releases and forever discharges the Released Parties, as defined above, from all claims, demands, rights, liabilities and causes of action of every nature and description whatsoever, known or unknown, including without limitation, from any and all claims, rights, demands, actions, obligations, damages, liabilities, and causes of action of any and every kind, nature and character whatsoever, whether based in tort, contract, statute, rule, or regulation, or on any other theory of recovery, whether known or unknown, and whether for equitable relief, statutory penalties, compensatory or punitive damages, arising out of, relating to, or in connection with any act or omission by or on the part of any of the Released Parties committed or omitted prior to the execution hereof. (The release set forth in this Section 4.5 shall be referred to hereinafter as the "General Release.") The General Release includes any unknown claims the Named Plaintiff does not know or suspect to exist in their favor at the time of the General Release, which, if known by them, might have affected their settlement with, and release of, the Released Parties by the Named Plaintiff or might have affected their decisions not to object to this Settlement or the General Release. With respect to the General Release, the Named Plaintiff stipulates and agrees that, effective upon the date of Final Judicial Approval, the Named Plaintiff shall be deemed to have, and by operation of the Final Order shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Massachusetts law, or any other similar provision under federal or state law, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The Named Plaintiff may hereafter discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the General Release, but the Named Plaintiff, effective upon the date of Final Judicial Approval, shall be deemed to have, and by operation of the Final Order shall have, fully, finally, and forever settled and released any and all of the claims released pursuant to the General Release whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

**4.6. J.C. Penney's Release of Named Plaintiff, the Settlement Class, and Plaintiff's Counsel.** Effective upon the date of Final Judicial Approval, J.C. Penney releases and forever discharges, the Named Plaintiff, the Settlement Class, and Class Counsel from any and

all claims relating to the institution or prosecution or settlement of the Actions, as well as any and all claims for contribution, indemnification, or any other claims relating to the award to the Settlement Class pursuant to Section 2.2 above.

## 5. ADDITIONAL PROVISIONS.

**5.1. No Admission of Liability or Wrongdoing.** This Agreement reflects the compromise and settlement of disputed claims between the Parties. Its constituent provisions, and any and all drafts, communications and discussions relating thereto, shall not be construed as or deemed to be evidence of an admission or concession of any point of fact or law (including, but not limited to, matters respecting class certification) by any person or entity, and shall not be offered or received in evidence or requested in discovery in the Action or any other action or proceeding as evidence of an admission or concession. J.C. Penney denied and continues to deny each of the claims and contentions alleged by Plaintiff in the Claim. J.C. Penney has repeatedly asserted and continues to assert defenses thereto, and has expressly denied and continues to deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the Claim.

**5.2. Fair, Adequate and Reasonable Settlement.** The Parties believe this Settlement is fair, adequate, and reasonable, and arrived at this Settlement in arms-length negotiations, taking into account all relevant factors, present and potential.

**5.3. Real Parties in Interest.** In executing this Agreement, the Parties warrant and represent that they, including Plaintiff Jacqueline Brenner in her representative capacities on behalf of the Class, are the only persons having any interest in any of the claims that are described or referred to herein, or in any of the pleadings, records, and papers in the Action, and, except as provided herein, neither said claims nor any part thereof have been assigned, granted or transferred in any way to any other person, firm or entity.

**5.4. Voluntary Agreement.** This Agreement is executed voluntarily and without duress or undue influence on the part of or on behalf of the Parties, or of any other person, firm or entity.

**5.5. Binding on Successors.** This Agreement shall bind and inure to the benefit of the respective successors, assigns, legatees, heirs, and personal representatives of each of the Parties.

**5.6. Parties Represented by Counsel.** The Parties acknowledge that they have been represented in negotiations for and in the preparation of this Agreement by independent counsel of their own choosing, that they have read this Agreement and have had it fully explained to them by such counsel, and that they are fully aware of the contents of this Agreement and of its legal effect.

**5.7. Authorization.** Each of the Parties warrants and represents that there are no liens or claims of lien or assignments in law or equity or otherwise of or against any of the claims or causes of action released herein and, further, that each party is fully entitled and duly authorized to give this complete and final general release and discharge.

**5.8. Construction and Interpretation.** Neither the Parties nor any of the Parties' respective attorneys shall be deemed the drafter of this Agreement for purposes of interpreting any provision hereof in any judicial or other proceeding that may arise between or among them.

**5.9. Headings.** The various headings used in this Agreement are solely for the convenience of the Parties and shall not be used to interpret this Agreement.

**5.10. Exhibits.** Any exhibit to this Agreement is an integral part of the Agreement and Settlement and is incorporated and made a part of this Agreement.

**5.11. Modifications and Amendments.** No amendment, change or modification of this Agreement or any part thereof shall be valid unless in writing and signed by the Parties.

**5.12. Governing Law.** This Agreement is entered into in accordance with the laws of the Commonwealth of Massachusetts and shall be governed by and interpreted in accordance with the laws of the Commonwealth of Massachusetts, without regard to its conflict of law principles.

**5.13. Further Assurances.** The Parties shall execute and deliver any and all additional papers, documents and other assurances and shall do any and all acts or things reasonably necessary in connection with the performance of its, her, or his, as the case may be, obligations hereunder to carry out the express intent of the Parties.

**5.14. Execution Date.** This Agreement shall be deemed executed upon the last date of execution by all of the undersigned.

**5.15. Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation, effectuation, and implementation of this Agreement.

**5.16. Counterparts.** This Agreement may be executed in two or more counterparts, which together shall constitute one and the same instrument.

**5.17. Severability.** Should any paragraph, sentence, clause or provision of this Agreement be held invalid or unenforceable, such provision shall be ineffective to the extent of such invalidity or unenforceability, without invalidating the remainder of such provision or the remaining portions of this Agreement.

> **PLEASE READ THIS DOCUMENT CAREFULLY. THIS AGREEMENT INCLUDES A SPECIFIC RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS**

AGREED AND ACCEPTED:

By: _____
Christopher B. Parkerson
Attorney for J.C. Penney
Campbell, Campbell, Edwards
& Conroy, P.C.
One Constitution Place, Suite 300
Boston, MA 02129

AGREED AND ACCEPTED:

J.C. PENNEY COMPANY, INC.

By: _Brooke Niemiec_
Brooke Niemiec
Its: _Divisional VP, CRM & Loyalty_

AGREED AND ACCEPTED:

By: _____
D. Greg Blankinship
Attorney for Jacqueline Brenner and Class
Meiselman, Packman, Nealon, Scialabba
& Baker, P.C.
1311 Mamaroneck Ave.
White Plains, NY 10605

AGREED AND ACCEPTED:

JAQUELINE BRENNER

_Jacqueline Brenner_

10