UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-11212-RGS

JAQUELINE BRENNER,
on behalf of herself and all others similarly situated

v.

J.C. PENNEY COMPANY, INC.

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION
FOR ATTORNEY'S FEES

December 26, 2013

STEARNS, D.J.

This matter is before the court on lead plaintiff Jacqueline Brenner's motion for attorney's fees and costs, requesting $450,000 in fees for law firm class counsel Meiselman, Packman, Nealon, Scialabba, & Baker P.C. (Meiselman Packman).[1] Defendant J.C. Penney Company, Inc. (J.C. Penney), while agreeing that class counsel is entitled to a "reasonable fee," opposes the request, arguing that it is unreasonable, given the straightforward nature of the underlying litigation.

BACKGROUND

On May 17, 2013, Brenner filed this Complaint against J.C. Penney,

---

[1] Meiselman Packman also sought $8,802.33 in costs, which was awarded in full on October 10, 2013.

alleging that its retail stores had unlawfully gathered customer ZIP codes in connection with credit card purchases, and had used those ZIP codes for "intrusive marketing purposes" in violation of a Massachusetts privacy statute, Mass. Gen. Laws ch. 93, § 105(a). This case is one of a number of ZIP code class actions filed in this district by Meiselman Packman, and it is the third in which Brenner appears as the named plaintiff.[2]

### *Legal Landscape of Section 105(a)*

Section 105(a) of the General Laws provides that, when accepting payments by credit card, a merchant shall not "write, cause to be written or require that a credit card holder write personal identification information, not required by the credit card issuer, on the credit card transaction form." Mass. Gen. Laws ch. 93, § 105(a). On March 11, 2013, the Massachusetts Supreme

---

[2] *See Brenner v. Kohl's*, Case No. 13-cv-10935-RGS (filed on April 15, 2013), and *Brenner v. Williams Sonoma*, Case No. 13-cv-10931-MLW (filed on April 16, 2013). The other Meiselman Packman ZIP code cases pending in this district of which the court is aware at this time are: *Tyler v. Bed Bath & Beyond, Inc.*, Case No. 13-cv-10639-WGY (filed on March 20, 2013) (now consolidated with *Whiting v. Bed Bath & Beyond, Inc.*); *Monteferrante v. Restoration Hardware Holdings, Inc.*, Case No. 13-cv-10932-MLW (filed on April 15, 2013); *Monteferrante v. The Container Store, Inc.*, Case No. 13-cv-11362-RGS (filed on June 6, 2013). The first of the ZIP code cases, *Tyler v. Michael Stores Inc.*, Case No. 11-cv-10920-WGY, was filed on May 23, 2011, and is the case that was reviewed by the SJC on questions certified by Judge Young.

Judicial Court (SJC) held that a ZIP code constitutes personal identification information for purposes of § 105(a), and that a plaintiff may bring a privacy violation action without any allegation of a monetized loss.[3] *Tyler v. Michaels Stores Inc.*, 464 Mass. 492 (2013). The SJC reasoned that section 105(a) was "intended primarily to address invasion of consumer privacy by merchants, not identify fraud." *Id.* at 501. Meiselman Packman continues to represent Melissa Tyler in the ongoing litigation before Judge Young.

Within days of the March 11, 2013 SJC decision, Meiselman Packman, on behalf of a stable of named plaintiffs (including Brenner) mailed a series of Chapter 93A (the Massachusetts Consumer Protection Act) demand letters to various Massachusetts retailers, including J.C. Penney, Kohl's and Williams-Sonoma.[4] In this case, a settlement was mediated prior to the Complaint being filed. (The notice of settlement was filed on the same day as

---

[3] The Court hypothesized that, in such cases, the two potentially intangible injuries might be: (a) usage of the ZIP code derived information for direct marketing (and the subsequent receipt of unwanted mail); and/or (b) sale of the information. The Court acknowledged that these types of harms are often not quantifiable, but could suffice as cognizable harm for purposes of the statute, resulting in nominal statutory damages of $25.

[4] For its part, J.C. Penney notes that it stopped asking customers for ZIP codes in its stores on April 13, 2013. Brenner sent notice to J.C. Penny of her intent to file this class action complaint on March 15, 2013.

the Complaint). Immediately after filing the Complaint, Brenner filed a motion for preliminary class certification and for approval of the settlement. The only issue since litigated has been that of attorney's fees.

### *Jurisdiction*

The assertion of diversity subject matter jurisdiction under the Class Action Fairness Act of 2006, 28 U.S.C. § 1332(d)(2), is not disputed.

### *Terms of the Class Settlement Agreement*

<u>Monetary Component</u>: The settlement provided $25 J.C. Penney gift certificates to the 100,100 class members in sub-class one and $10 gift certificates to the 104,911 class members in sub-class two.[5] Class members received the certificates by direct mail along with notice of the settlement.

<u>No Admission of Wrongdoing</u>: In the agreement, J.C. Penney expressly denied the allegations that anyone in the class had been damaged "in any sum whatsoever" and denied that Brenner or anyone in the class was "entitled to any relief." Provision 5.1 of the agreement specifically states that there is no admission of liability or wrongdoing on the part of J.C. Penney.

---

[5] Sub-class one consisted of class members from whom J.C. Penney had collected ZIP codes for the first time during a transaction after March 10, 2009, while sub-class two consisted of persons from whom J.C. Penney had collected a ZIP code prior to March 10, 2009, and then again after March 15, 2009.

<u>Choice of Law</u>: Section 5.12 of the agreement states that it was entered into "in accordance with the laws of the Commonwealth of Massachusetts and shall be governed and interpreted in accordance with the laws of the Commonwealth of Massachusetts without regard to its conflict of law principles."

<u>Attorney's Fees</u>:  Section 2.5 of the agreement notes that the parties could not reach an agreement on the amount of attorney's fees and costs to be paid by J.C. Penney, and provides that class counsel "shall make a petition for attorney's fees to which J.C. Penney reserves the right to object."

<u>Notice to Class</u>: The notice sent to class members after the preliminary approval was entered by the court included the gift certificate with the statement that: "You can use this certificate starting today."  The notice also explained how to opt out of or object to the settlement.  The notice did not specify the amount of attorney's fees being sought by Meiselman Packman.

## DISCUSSION

### *Applicable Law*

"[T]he issue of attorney's fees has long been considered for *Erie* purposes to be substantive and not procedural, and so state-law principles normally govern the award of fees." *In re Volkswagen and Audi Warranty*

*Extension Litig.*, 692 F.3d 4, 12 (1st Cir. 2012) (collecting cases).[6] Given the choice-of-law provision in the Settlement Agreement, the award of attorney's fees is governed by Massachusetts law.

### ***Attorney's Fee Awards in Massachusetts***

Under Massachusetts law, there are two general approaches to determining a reasonable attorney's fee. The first is the lodestar method. The second is a multi-factor analysis that recognizes that "[n]either the time spent nor any other single factor is necessarily decisive of what is considered to be a reasonable charge for [an attorney's] services." *Cummings v. National Shawmut Bank of Boston*, 284 Mass. 563, 569 (1934).[7]

---

[6] Meiselman Packman argues that *Volkswagen* is inapplicable as that case did not involve a common fund. This case, however, also does not implicate common-fund principles because, as *Volkswagen* makes clear, a settlement is not a "common fund," at least for attorney's fee award purposes, when class counsel will receive fees separate from the settlement proceeds. Such apportionment, particularly when the fee is contested, generally "render[s] the common fund method inapplicable." *Volkswagen*, 692 F.3d at 17.

[7] The factors identified for consideration in *Cummings* are: (1) the ability and reputation of the attorney; (2) the demand for his or her services by others; (3) the amount at issue and the importance of the matter; (4) the price usually charged for services in the area in which the attorney practices; (5) the amount of money or value of property affected by the controversy; and (6) the result secured. *Id*.

## *Lodestar Analysis*[8]

A fee calculated by "multiplying the number of hours reasonably spent on a case times a reasonable hourly rate . . . is generally referred to as a 'lodestar' award." *Fontaine v. Ebtec Corp.*, 415 Mass. 309, 324 (1993). The court's starting point is the number of hours billed by the attorney seeking the fee. In this connection, the fee seeker is obligated to provide the court with a particularized account of the fee claim. *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 527 (1st Cir. 1991). While Meiselman Packman initially did not include its billing records in the motion for attorney's fees (presumably in expectation of a common fund percentage award), the court required that these be submitted as a measure of the reasonableness of the dollar amount of the fee being sought. On October 23, 2013, Meiselman Packman attached its billing records to a declaration filed along with a supplemental memorandum. (Doc. No. 27-1.) In its submission, Meiselman Packman reported a total of 337 billable hours expended on this case. With the exception of a few hours billed by a paralegal, the bulk were billed by

---

[8] It should be noted that under federal law, a court has discretion to use a lodestar approach, or a percentage of the fund method, or a combination of the two, while weighing essentially the same factors propounded in *Cummings*. *See In re Thirteen Appeals*, 56 F.3d 295, 307-309 (1st Cir. 1995); *Fogerty. T-Peg, Inc. v. Vt. TimberWorks, Inc.*, 669 F.3d 59, 63 (1st Cir. 2012).

Meiselman Packman partners at a uniform rate of $600 an hour.

### *Adjustments to Hours for Reasonableness*

The court's first task is to calculate the number of hours "reasonably spent." After determining the number of hours actually spent, this entails subtracting those hours that are "duplicative, unproductive, excessive, or otherwise unnecessary." *Grendel's Den Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984).

Research and Drafting: Meiselman Packman billed over 100 hours on tasks described as legal research and motion drafting related to the *J.C. Penney* case. The following entries on May 6 and May 8, 2013, are illustrative:

| Attorney | Task | Hours |
|---|---|---|
| May 6, 2013 | | |
| GDB | RESEARCH RE: CLASS CERTIFICATION DECISIONS IN CALIFORNIA; | 3.10 |
| GDB | RESEARCH RE: STATUTORY DAMAGES IN CALIFORNIA; | 3.80 |
| TSG | RESEARCH JCP CALIFORNIA SETTLEMENT; | 1.10 |
| TSG | RESEARCH OTHER CALIFORNIA ZIP CODE SETTLEMENTS; | 3.10 |
| TSG | RESEARCH DAMAGES ISSUE IN CALIFORNIA V. MASS; | 1.10 |
| May 8, 2013 | | |

| GDB | RESEARCH RE: CLASS ACTION DECISIONS IN ZIP CODE CASES; | 2.7 |
| GDB | RESEARCH RE: DAMAGES UNDER BEVERLY-SONG VERSUS SECTION 105(A); | 5.2 |
| TSG | RESEARCH RE: CLASS CERTIFICATION OF ZIP CODE CASES AND APPLICABLE FIRST CIRCUIT LAW; | 2.3 |
| TSG | RESEARCH RE: BEVERLY-SONG SETTLEMENT STRUCTURE AND OPINIONS APPROVING SAME; | 1 |

The court has substantially reduced the number of allowable hours of reimbursable research. Meiselman Packman points to its claimed expertise in ZIP code litigation and class actions as justification for its proposed $600 an hour partner billing rate (as noted, Meiselman Packman litigated the *Tyler* case before the SJC, and is lead counsel for all the other ZIP code cases in this district). It is apparent from the billing records that the partners essentially assigned themselves to research the same issues. While, "[t]ime spent by two attorneys on the same general task is not . . . *per se* duplicative," *Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 860 (1st Cir. 1998), it must be justified by the circumstances of the litigation, such as the "ferocity" of an adversary's defense (as was the case in *Rodriguez-Hernandez*, where the court noted the "vehement 'Stalingrad defense'" deployed by the opposing party). Here, J.C. Penney signaled its capitulation within a month of the demand

9

letter being received.

Moreover, while the court recognizes that expert knowledge must be regularly replenished, there is no reason why J.C. Penney should have to pay for it where it has no special application to the litigation at hand. And to the extent that some basic research is required, as claimed here, in the usual law firm business model, "grunt" work is done by entry-level associates, or, where a firm claims to have few such associates (as does Meiselman Packman), it is billed to clients at associate rates. *Cf. Lipsett v. Blanco*, 975 F.2d 934, 940 (1st Cir. 1992) ("Clerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them.").

The court has allowed Meiselman Packman 26.40 of the 79.20 hours billed that appear to be attributable to basic or general research. This reflects reductions for duplication of tasks[9] as well as reductions to a level the court believes to be a reasonable allocation of time to research for this case. These hours will be reimbursed at an hourly rate of $275 rather than of $600.

---

[9] Essentially, the court eliminated hours where two partners were each doing the same work in the same measure where it appears from the record that each had prime responsibility for a separate aspect of the litigation at issue (such as Mr. Blankinship in researching and preparing for the mediation and Mr. Garber in researching and preparing the preliminary settlement approval papers).

Other Associate-Level Work: Additional work billed (such as days of drafting the same memorandum by multiple partners) also suffers from excessive duplication:

| Attorney | Task | Hours |
|---|---|---|
| TSG (6/3) | DRAFT MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL; | 4.9 |
| TSG (6/3) | DRAFT PROPOSED ORDER; | .7 |
| TSG (6/4) | DRAFT MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL; | 5.9 |
| TSG (6/5) | CONTINUE DRAFTING PRELIMINARY APPROVAL PAPERS; | 6.8 |
| TSG (6/6) | DRAFT PRELIMINARY APPROVAL MEMORANDUM AND PROPOSED ORDER; | 2.4 |
| TSG (6/7) | DRAFT PRELIMINARY APPROVAL BRIEF AND PROPOSED ORDER; | 2.3 |
| GDB (6/14) | WORK ON MOTION FOR PRELIMINARY APPROVAL AND D. BLANKINSHIP DECLARATION FOR SAME; | 2.7 |
| TSG (6/17) | WORK ON PRELIMINARY APPROVAL; | .5 |
| GDB (6/18) | WORK ON DECLARATION IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL; | 1.1 |
| GDB (6/18) | WORK ON MOTION IN SUPPORT OF PRELIMINARY APPROVAL; | 3.9 |
| TSG (6/19) | WORK ON PRELIMINARY APPROVAL NOTICE AND BRIEF; | 1.7 |

| TSG (6/20) | DRAFT PRELIMINARY APPROVAL PAPERS, BRIEF AND DECLARATION; | 1.4 |
|---|---|---|
| TSG (6/24) | WORK ON PRELIMINARY APPROVAL PAPERS AND DECLARATIONS FOR SAME AND WORK ON NOTICE FOR SAME; | 4.3 |
| TSG (6/25) | DRAFT MEMO AND MOTION FOR PRELIMINARY APPROVAL AND DECLARATIONS FOR SAME; | 5.7 |
| TSG (6/26) | CONTINUE WORKING ON PRELIMINARY APPROVAL PAPERS AND RESEARCH RELATING TO SAME; | 3.3 |
| TSG (6/27) | CONTINUE DRAFTING PRELIMINARY APPROVAL PAPERS AND RESEARCH RELATING TO SAME; | 2.3 |
| TSG (6/28) | DRAFT FINALIZE AND FILE PRELIMINARY APPROVAL PAPERS; | 3.10 |

The court recognizes that the drafting of legal documents is not a task to be lightly undertaken, but it does not require that multiple partners work on the same drafting task at the same time. Consequently, the work of Mr. Blankinship on drafting the preliminary approval motion has been eliminated, insufficiently specific entries of Mr. Garber have been halved, and 20 hours of the drafting work has been reduced to the associate-level rate of $275 an hour.

Also unexplained is the justification for re-billing the same research and drafting work in September that had been performed in June, as the chart

below (extracted from the billing records) indicates.

| Attorney | Task | Hours |
|---|---|---|
| TSG (9/16) | RESEARCH AND DRAFTING FINAL APPROVAL BRIEF IN SUPPORT OF APPROVAL OF SETTLEMENT | 5.00 |
| TSG (9/16) | RESEARCH RELATING TO FEE BRIEF | 3.10 |
| TSG (9/17) | RESEARCH AND DRAFT FINAL APPROVAL MEMORANDUM | 4.80 |
| TSG (9/18) | RESEARCH AND DRAFT FINAL APPROVAL MEMORANDUM | 5.70 |
| TSG (9/19) | RESEARCH AND DRAFT REQUEST FOR FEES AND EXPENSES | 3.20 |
| TSG (9/20) | RESEARCH AND DRAFT REQUEST FOR FEES AND EXPENSES | 1.90 |
| JFP (9/20) | REVISE, RESEARCH AND DRAFT MOTION FOR FINAL APPROVAL | 4.30 |
| TSG (9/23) | RESEARCH AND DRAFT FINAL APPROVAL MEMORANDUM AND FINAL APPROVAL ORDER | 2.70 |
| TSG (9/24) | RESEARCH, DRAFT, REVISE, EDIT, FINALIZE FINAL APPROVAL PAPERS INCLUDING MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL, MEMORANDUM OF LAW IN SUPPORT OF FEES, MOTIONS FOR BOTH, FINAL APPROVAL ORDER, DECLARATION | 4.90 |

Giving the benefit of the doubt to Meiselman Packman and assuming that the partners were reviewing prior research and memoranda from June

13

to insure the consistency of the final approval papers filed in September, the court deems one-half of the time billed by Mr. Garber (at the partner's $600 hourly rate) sufficient for that purpose.

<u>Block Billing and Duplicative Work</u>: The generic billing category "work on mediation statement," has been reduced by one-half and the court has eliminated duplicative efforts by an additional partner performing the same task, a seeming redundancy where responsibility for the mediation had been assigned to Mr. Blankinship. For example:

| Attorney | Task | Hours |
| --- | --- | --- |
| GDB | WORK ON MEDIATION STATEMENT (4/30) | 2.60 |
| GDB | WORK ON MEDIATION STATEMENT (5/1) | 2.70 |
| GDB | WORK ON MEDIATION STATEMENT AND RESEARCH FOR SAME (5/3) | 6.50 |
| GDB | WORK ON MEDIATION STATEMENT (5/6) | 1.40 |
| GDB | WORK ON MEDIATION STATEMENT AND RESEARCH RE: SAME (5/8) | 1.70 |
| JFP | WORK ON MEDIATION STATEMENT (5/8) | 2.10 |

For the same reason, the court has reduced the block-billed category "work on settlement agreement" by one-half and has eliminated duplicative entries by multiple partners.

<u>Time Spent on Attorney's Fee Application</u>: The fee application is a

necessary component of an attorney's fee award and reasonable hours spent on its preparation are reimbursable. *McCarthy v. Local 254, SEIU*, 186 F.3d 52, 62 (1st Cir. 1999). While the court ordered supplementation of the initial fee application to include the billing records, these should have been submitted with the original fee application. Moreover, the court agrees with J.C. Penney that the hours spent on further briefing of the fee issue appear largely unnecessary, or, at the least, excessive. The court has therefore reduced this category by one-half and adjusted the hours' reimbursement to the associate rate.

The Complaint: As previously noted, *Brenner v. J.C. Penney* was the third ZIP code complaint filed by Brenner against a retailer, and was the fifth in a series of six ZIP code complaints filed by plaintiffs represented by Meiselman Packman. The court takes judicial notice of the fact that the Complaint filed in this matter is identical in wording to the complaint filed in *Brenner v. Williams Sonoma* one month earlier (with the exception of the substitution of defendants' names and the deletion of certain claims specific to Williams Sonoma). The court sees no reason to reimburse the cutting and pasting involved in preparing the *J.C. Penney* complaint beyond the hour of associate time (at the $275 rate) the task would have required, at the most.

Other Reductions: The work of the partner referred to as "JFP" will be deleted, with the exception of those entries reflecting discussions with the client. The court sees no justification for adding a third partner to this case. Travel time has also been halved in recognition of its classification as "non-core" legal work. *See, e.g., Chestnut v. Coyle,* 2004 WL 438788, at *3 (D. Mass. Mar. 9, 2004) (noting that travel time may be discounted by an even larger percentage than other non-core work, and collecting cases). The court has not reduced time documented as involving communications with defense counsel, letter writing, attendance of mediations, court appearances, or conferences, even if attended by more than one partner.

### *Reasonable Rate*

Having determined the reasonable number of billable hours (174.65), the court turns to the reasonable rate to apply to those hours. As previously noted, Meiselman Packman has billed all hours, with the exception of a few tasks performed by a paralegal, at $600 an hour, a figure which although generous for the relevant market (Boston/Providence), the court will accept as commensurate with the firm's customary rate and counsels' experience. The court has also determined a fair rate for associate-level work to be $275 per hour and a fair rate for clerical and paralegal tasks to be $90 per hour by

whomever performed.

The results is a lodestar fee award of $75,959.00. This is the sum of: 65.80 research hours and associate-level drafting hours billed at a $275 rate ($18,095.00), 14.60 hours of clerical work billed at $90 per hour ($1,314.00), and 94.25 hours billed at a partner-level rate of $600 per hour ($56,550.00).

### *Application of a Multiplier*

Once the lodestar is established, it "represents a presumptively reasonable fee, although it is subject to upward or downward adjustment in certain circumstances." *Norkunas v. Brossi Bros. Ltd. P'shp*, 2012 WL 772047, *9 (D. Mass. March 7, 2012), quoting *Guckenberger v. Boston Univ.*, 8 F. Supp. 2d 91, 108 (D. Mass. 1998). Meiselman Packman urges this court to apply a multiplier to the lodestar calculation in this case because of the "extraordinary," "exceptional," and "unparalleled" result it secured for the Class. (Pl.'s Suppl. Mem. 2-3.) This the court declines to do as, in its judgement, the case required no extensive litigation effort, given J.C. Penney's willingness to settle the case almost at its inception.[10] Nor is the court

---

[10] In addition to the court's perspective, class counsel's own statements to the court weigh against the application of a multiplier. As Mr. Blankinship stated at the November 22, 2013 hearing on the settlement of *Brenner v. Kohl's*, "frankly, it's a pretty straightforward case . . . . [y]ou know, it's not particularly complex . . . Ms. Brenner wasn't deposed in this case or in *JC*

concerned that the refusal to award a multiplier will discourage firms like Meiselman Packman from prosecuting similar litigation on a contingent basis. As was made clear when the court questioned Ms. Brenner, this is not a case where the firm chose to take on what might have appeared a quixotic quest on behalf of a plaintiff unable to afford counsel. To the contrary, it was Meiselman Packman that sought out Ms. Brenner as a plaintiff in this and several other nearly identical cases in which the result, given the decision of the SJC in the *Tyler v. Michael Stores*, was virtually preordained.

ORDER

The motion for attorney's fees and costs is <u>GRANTED IN PART</u> and <u>DENIED IN PART</u>. Counsel is to be awarded $75,959.00 of the requested $450,000.00 in attorney's fees, to be paid by J.C. Penney pursuant to the Settlement Agreement.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

*Penney*, and that really was just a product of the fact that I think companies realized, once *Tyler v. Michaels* was decided by the Supreme Judicial Court that this practice was illegal, that there isn't a lot of upside for those companies to litigate the case . . . . it's efficient for them to reach a settlement that is – you know, helps them avoid litigation, while, at the same time, provides some relief for the class." *Brenner v. Kohl's*, 13-10935, Hr'g Tr. 5:17-6:18, Nov. 22, 2013.